AO 106 (Rev. 01/09) Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

JUN 11 2019

JULIA C DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:19MJ00077
237 N. Chestnut Street )
Marion, VA )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Western_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):* 237 N. Chestut St., Marion, VA - to include the residence, curtilage, garages, outbuildings, campers, persons and vehicles present, and vehicles in the immediate vicinity of the residence provided the keys to or operators of said vehicles are found on the premises. Attachment A consists of a photograph of the residence.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § _846/841(a)(1)_ , and the application is based on these facts: See Attachment C      and/or    841(a)(1)

☒ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Brian Snedeker_
Applicant's signature

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/11/19

_/s/ Pamela Meade Sargent_
Judge's signature

City and state: Abingdon, Virginia

Pamela Meade Sargent, USMJ
*Printed name and title*

# ATTACHMENT A



237 N. Chestnut St., Marion, VA

ATTACHMENT B

1. Methamphetamine, methamphetamine distribution paraphernalia including (but not limited to) scales, cutting material, plastic baggies, wrapping material; electronic communication devices (such as cellular telephones) that are used to communicate with other drug traffickers/co-conspirators; electronic equipment used for counter-surveillance to include video surveillance systems and related DVRs (digital video recorders), scanners, and anti-bugging devices.

2. Firearms, including but not limited to handguns, rifles, and shotguns that are commonly used by individuals to protect controlled substances and related drug proceeds/assets. Firearms, oftentimes stolen, are also routinely bartered in exchange for controlled substances.

3. Books, records, ledgers, notes, and videos pertaining to the illicit distribution, purchasing, and transporting of methamphetamine.

4. Messages, letters, telephone numbers, and addresses relating to customers, suppliers, and other co-conspirators involved with the illicit distribution, purchasing, and transporting of methamphetamine. These messages, letters, telephone numbers, and addresses may be written on personal calendars, personal address and /or telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

5. Photographs and videos depicting methamphetamine, drug distribution paraphernalia, substantial assets, co-conspirators, and persons with methamphetamine,

6. Books, ledgers, receipts, bank statements, cashier's checks, and other items evidencing the acquisition, secreting, transferring and/or concealment of assets or the expenditure of narcotics proceeds.

7. Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles. Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs, keys, receipts, mail, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

8. Large amounts of currency (exceeding $1000.00) or readily transported assets which are used as cash equivalents (cashier's checks, prepaid money/credit cards, money orders, gold, diamonds, precious jewels, etc.)

9. Items listed in Paragraphs 3 through 7 may be stored in digital media. Therefore, digital media (including but not limited to computers/computer hard drives, digital video recorders (DVRs), floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular telephones/smartphones, digital cameras, iPODs, iPADs, etc.) are to be seized and examined for the items listed in Paragraphs 3 through 7.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 237 N. Chestnut St., Marion, VA. This affiant, after obtaining and reviewing information, believes there is evidence of distribution of methamphetamine and/or conspiracy to distribute methamphetamine at 237 N. Chestnut St., Marion, VA in violation of 21 USC 841(a)(1) and 846/841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (28) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II Controlled Substance). I have also executed hundreds of search warrants related to the trafficking and manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my investigation of Dale Atwell and information provided to me by other law enforcement officers. Some of the information provided by the other law enforcement officers was initially given to said officers by admitted methamphetamine users and traffickers as well as reliable confidential sources. Any reference to the gender of any unnamed persons mentioned within this affidavit does not necessarily reflect the true gender of said persons.

5. During 2018, an admitted methamphetamine user advised law enforcement that he could purchase methamphetamine from Dale Atwell

6. During 2018, a reliable confidential source (hereafter referred to as "CS1") advised law enforcement that Dale Atwell is a methamphetamine trafficker.

    CS1 is an admitted methamphetamine user and has performed at least (1) controlled purchase (monitored, recorded, and surveilled by law enforcement) of methamphetamine.

7. During 2018, an admitted methamphetamine trafficker (hereafter referred to as "Trafficker A") advised law enforcement that Dale Atwell was looking for a distribution weight quantity of methamphetamine (a quantity sufficient for redistribution in smaller amounts).

8. During late 2018, an admitted methamphetamine user and trafficker advised law enforcement that Trafficker A was obtaining methamphetamine from Dale Atwell.

9. During the last six months, a reliable confidential source (hereafter referred to as "CS2") performed multiple (5 or more) controlled purchases of methamphetamine from/through/involving an individual (hereafter referred to as "Person A") in Marion, VA. During each of the controlled purchases, once Person A was in possession of the United States Currency (USC) provided by CS2, Person A went to and entered the residence of Dale Atwell located at 237 N. Chestnut St., Marion, VA (a single family dwelling). On each occasion, after a short period of time, Person A exited Atwell's residence, returned to the location of CS2, and provided (sometimes indirectly) CS2 with methamphetamine. CS2 advised law enforcement that on each of the controlled purchases she observed Person A handling both the USC provided by CS2 as well as the methamphetamine subsequently received by CS2.

    CS2 is considered reliable and has successfully performed in excess of (25) methamphetamine controlled purchases since the Summer of 2018. CS2 has also provided law enforcement with information regarding multiple wanted persons and the information was instrumental in the subsequent apprehension of said wanted persons.

10. During the last six months, a reliable confidential source (hereafter referred to as "CS3") observed Person A distribute methamphetamine in Marion, VA on multiple occasions (four or more). On these occasions, CS3 noted that after Person A received USC from a methamphetamine customer, Person A promptly went to the residence of Dale Atwell, entered the home, and soon returned to the customer with the desired/ordered amount of methamphetamine.

    CS3 is considered reliable and has successfully performed multiple controlled purchases of methamphetamine.

11. During late March 2019, an individual (hereafter referred to as "Trafficker B") was found in possession of digital scales, new/unused small Ziploc-type baggies (a type commonly utilized by narcotics traffickers to package drugs for resale), and multiple small, Ziploc-type baggies containing a crystalline substance (suspected methamphetamine). Trafficker B subsequently admitted (against his own penal interest) that he was a methamphetamine sub-distributor for Dale Atwell and claimed that Atwell provided Trafficker B with one~~ounce~~ ounce of methamphetamine at a time to sell.   *one*  BCS 6-11-2019   pms 6/11/19

12. On 05-09-2019, an individual (hereafter referred to as "Trafficker C") was interviewed by law enforcement. Trafficker C admitted (against her own penal interest) being a methamphetamine sub-distributor for Dale Atwell and claimed she has probably sold a total of a couple of ounces of methamphetamine for Atwell. Trafficker C advised that Atwell hides his methamphetamine supply in various locations (couch, tire, air filter etc.) throughout and around his home. Trafficker C also claimed that Atwell has a number of firearms (pistols and rifles) and trades methamphetamine for firearms, chainsaws, and stolen property.

13. On 06-06-2019, an individual (hereafter referred to as "Trafficker D") was searched by law enforcement in Smyth County, VA pursuant to Trafficker D's 4th Amendment waiver. Trafficker D was found to be in possession of approximately (12) ounces of methamphetamine and approximately $10,000 USC. Trafficker D admitted (against his own penal interest) trafficking in multi-gram to multi-ounce quantities of methamphetamine to various persons and claimed that he supplied Dale Atwell with distribution quantities of methamphetamine. Trafficker D claimed that Atwell is an ounce methamphetamine dealer (sells methamphetamine by the ounce).

14. On 06-10-2019, an individual (hereafter referred to as "Trafficker E") was arrested in Smyth County, VA for Possession With Intent to Distribute Methamphetamine and Transporting One Ounce or More of Methamphetamine into the Commonwealth of Virginia. Trafficker E admitted (against her own penal interest) conspiring to distribute methamphetamine. Trafficker E also claimed that Dale Atwell was a large scale methamphetamine supplier in Smyth County, VA. Trafficker E claimed that she observed (10) to (11) ounces of methamphetamine hidden in Dale Atwell's kitchen ceiling fan within the last (5) days. Trafficker E also stated that Atwell said he was going to obtain more methamphetamine on 06-10-2019.

15. A review of Dale Atwell's criminal history revealed his 2003 state arrest on (161) counts of Conspiracy to Violate the Controlled Substances Act (all nolle prossed and he was subsequently convicted of two counts of Accessory After the Fact – Felony) and his 2012 state arrest for Possession of Methamphetamine and other non-drug related felonies (Atwell was convicted of the non-drug felonies and the methamphetamine charge was nolle prossed), During 2017 and 2018, Atwell failed probation administered drug screens that resulted in laboratory analysis revealing Atwell's use of methamphetamine.

16. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who distribute and/or conspire to distribute methamphetamine typically maintain methamphetamine, methamphetamine distribution paraphernalia (small, plastic, Ziploc-type baggies, digital scales, etc.), notes, records, messages, and telephone numbers (pertaining to methamphetamine trafficking related contacts/co-conspirators/customers), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences (and the residences/distribution locations they utilize for narcotics trafficking purposes) and related garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at or in the immediate vicinity of the trafficker's/conspirator's residence/property/distribution location.

17. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that persons who distribute and/or conspire to distribute methamphetamine routinely have individuals who are customers and/or co-conspirators present at their residences (and the residences/distribution locations they utilize for narcotics trafficking purposes) and related, garages, outbuildings/barns, and campers. These customers/co-conspirators are typically drug users and drug traffickers themselves as they generally sell some (if not all) of the methamphetamine they purchase in order to make a profit, pay for their own drug

habits, or both. These customers/co-conspirators often illegally possess methamphetamine and drug use paraphernalia along with notes, records, messages, and telephone numbers (pertaining to the acquisition/distribution of methamphetamine), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at or in the immediate vicinity of their sources'/co-conspirators' residences/properties/distribution locations.

18. This affiant, on multiple occasions during the last several years, has had methamphetamine distributors and/or manufacturers destroy/attempt to destroy evidence (methamphetamine and/or mixtures containing methamphetamine) of methamphetamine distribution and/or manufacturing during the execution of federal search warrants. During these incidents, once the methamphetamine trafficker/manufacturer became aware of a law enforcement presence at his/her residence for the purpose of executing a search warrant, the trafficker/manufacturer quickly and easily disposed/attempted to dispose of methamphetamine and/or related mixtures by flushing same down a toilet or rinsing same down a sink inside the residence. In one particular incident during 2019, this affiant had reliable information that a methamphetamine trafficker possessed multiple gallon sized Ziploc-type plastic bags that each contained multiple pounds of methamphetamine. By the time law enforcement officers reached the trafficker's master bathroom during the execution of a federal search warrant at the trafficker's residence, they found methamphetamine residue/crystals scattered about the floor around the toilet and (2) one gallon Ziploc-type bags laying next to the toilet with one bag containing residue and the other containing approximately (1) ounce of methamphetamine. In that particular incident, this affiant believes multiple pounds of methamphetamine were successfully flushed down the toilet by the methamphetamine trafficker before he retreated to another room in the house where he was subsequently apprehended.

Based upon the above, this affiant believes there is reasonable suspicion that knocking and announcing the presence of law enforcement officers at the time of the execution of this search warrant would result in the destruction or attempted destruction of evidence (methamphetamine) by the occupant(s) of the residence.

19. Dale Atwell's known residence is 237 N. Chestnut St., Marion, VA.

20. Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the premises known as 237 N. Chestnut St., Marion, VA (located within the Western District of Virginia) as there is probable cause to believe that there is evidence of a violation of 21 USC 841(a)(1) and 846/841(a)(1) at said premises.

_____  6-11-2019
Brian Snedeker, Special Agent (DEA)   Date

Subscribed and sworn to before me, this the 11th day of June 2019
in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia


Seen by:

____/s/ Roy F. Evans____   06-11-2019
Roy F. Evans, SAUSA   Date